UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AZUCENA VASQUEZ LOPEZ,

Petitioner,

v.

JULIO HERNANDEZ, BRUCE
SCOTT, KRISTI NOEM,[1] UNITED
STATES DEPARTMENT OF
HOMELAND SECURITY, and
PAMELA BONDI,[2]

Respondents.

C26-0775 TSZ

ORDER

THIS MATTER comes before the Court on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, docket no. 1.  Having reviewed all papers filed in support of, and in opposition to, the petition, the Court enters the following Order.

**Background**

Petitioner Azucena Vasquez Lopez (aka Azucera Vasquez-Lopez) is a citizen of Estados Unidos Mexicanos (Mexico) who has lived in the United States since 2006.  Pet.

---

[1] Markwayne Mullin, Secretary of the U.S. Department of Homeland Security, is substituted for former Secretary Kristi Noem.  *See* Fed. R. Civ. P. 25(d).

[2] Todd Blanche, Acting U.S. Attorney General, is substituted for former Attorney General Pamela Bondi.  *See* Fed. R. Civ. P. 25(d).

ORDER - 1

at ¶¶ 16 & 23 (docket no. 1); Ex. A to Kang Decl. (docket no. 2-1 at 3).  Petitioner is a single mother with three children, ages 14, 18, and 19, all of whom are United States citizens.  Pet. at ¶ 23; Ex. A to Kang Decl. (docket no. 2-1 at 3).  She suffers from type 2 diabetes and kidney disease, and she was hospitalized in October 2025 for septic shock, as a result of which she has since been in a weakened condition.  Pet. at ¶ 26; Ex. B to Kang Decl. (docket no. 2-2 at 88).  Petitioner is just over five feet tall, and she weighs approximately 126 pounds.  Ex. C to Kang Decl. (docket no. 2-3 at 4).

On January 6, 2026, multiple U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") agents approached petitioner in a parking lot[3] in Vancouver, Washington, while she was loading merchandise into the trunk of her vehicle.  _Id._ (docket no. 2-3 at 5).  Petitioner was taken into custody and is currently housed at the Northwest ICE Processing Center ("NWIPC").  _Id._; Pet. at ¶ 2.  A deportation officer, who was not even present when petitioner was arrested, later wrote that petitioner "was not cooperative and resist [sic] during the encounter."  Ex. C to Kang Decl. (docket no. 2-3 at 5).  No details have been provided to support this conclusory statement.  _See id._

Petitioner was convicted in 2008 (almost eighteen years ago) of misdemeanor assault and received a suspended sentence plus a $573 fine, which has been fully paid.

---

[3] U.S. Department of Homeland Security ("DHS") Form I-213 indicates that ICE ERO officers initiated contact with petitioner in the parking lot at 9700 NE Hwy 99.  Ex. C to Kang Decl. (docket no. 2-3 at 5).  Contrary to the DHS report, "Walmart" is not located at this address; rather, this area is associated with WinCo Foods.  _See_ https://www.wincofoods.com/stores; _see also_ Pet. at ¶ 27.

ORDER - 2

Pet. at ¶ 25; Ex. B to Kang Decl. (docket no. 2-2 at 100–03).  She has no other criminal history.  Pet. at ¶ 25.

On January 29, 2026, counsel for petitioner, who are lawyers with the Northwest Immigrant Rights Project ("NIRP"), filed a petition seeking, on behalf of seven (7) individuals, including petitioner, enforcement of the judgment in favor of the Bond-Denial Class (or, in other words, the bond hearing that had been ordered on a class-wide basis) in *Rodriguez Vazquez v. Bostock*, W.D. Wash. Case No. C25-5240 TMC.  *See* Pet. (docket no. 1) in *Rivera Hernandez v. Hermosillo*, W.D. Wash. Case No. C26-341 TMC. On January 30, 2026, while the January 29, 2026, habeas petition was still pending, an immigration judge conducted a hearing and concluded that she had no jurisdiction to conditionally release petitioner or, in the alternative, that she would deny bond based on "danger" and "flight risk."  Ex. A to Kang Decl. (docket no. 2-1); *see* Pet. at ¶¶ 28–31. Petitioner reserved the right to appeal the denial of bond to the Board of Immigration Appeals ("BIA").  *See* Ex. A to Kang Decl. (docket no. 2-1 at 6).  On February 4, 2026, the January 29, 2026, habeas petition was denied because petitioner had already received a bond hearing.  *See Rivera Hernandez v. Hermosillo*, 26-cv-341-TMC, 2026 WL 295709 (W.D. Wash. Feb. 4, 2026).[4]

---

[4] Respondents suggest that petitioner's attorneys have not been candid with the Court about the prior denial of habeas relief.  *See* Return at 1 (docket no. 6).  Respondents' accusation is entirely unwarranted.  The March 6, 2026, habeas petition, reveals that petitioner previously sought the remedy allowed to class members in *Rodriguez Vazquez* (*i.e.*, a bond hearing), and it clarifies that the issues of dangerousness and flight risk were neither litigated nor decided in connection with the January 29, 2026, habeas petition.  *See* Pet. at 7 n.2 (docket no. 1).  Respondents do not, and could not, suggest that petitioner is barred from bringing a second or successive habeas petition under 28 U.S.C. § 2241, *see Barapind v. Reno*, 225 F.3d 1100, 1111 (9th Cir. 2000), and

ORDER - 3

On February 18, 2026, petitioner filed an application (Form EOIR-42B) for cancellation of removal and adjustment of status.  Correa Decl. at ¶ 15 (docket no. 7).  On March 6, 2026, NIRP filed another habeas petition, this time on behalf of only Azucena Vasquez Lopez, challenging the denial of bond and requesting *inter alia* the immediate release of petitioner from the NWIPC.  *See* Pet. at pp. 18–19.  In their return, respondents contend that (i) petitioner should be required to exhaust her administrative remedies, and (ii) petitioner has not identified any constitutional or legal error that is subject to judicial review.  A hearing in the Tacoma immigration court, presumably on petitioner's pending application for cancellation of removal, is scheduled for April 20, 2026.  *See* Correa Decl. at ¶ 16 (docket no. 7).  As explained further below, the Court concludes that petitioner should be released in advance of such hearing.

**Discussion**

The determination of whether a noncitizen is "dangerous" or a flight risk for immigration-detention purposes involves a mixed question of law and fact that is reviewable in habeas proceedings.  *See* *Martinez v. Clark*, 124 F.4th 775, 779 (9th Cir. 2024) (citing *Wilkinson v. Garland*, 601 U.S. 209 (2024)).  Respondents do not dispute that a district court may review for an abuse of discretion a decision by the BIA regarding dangerousness or flight risk.  *See* *id.* at 779–80.  The issue before the Court is whether petitioner must remain in custody while she waits for the BIA to review the immigration

the denial of the January 29, 2026, habeas petition does not preclude consideration of the current habeas petition.

ORDER - 4

judge's denial of conditional release.  Petitioner's attorneys estimate, based on data from 2024, that the exhaustion of an administrative appeal will require more than six months.  *See* Pet. at ¶ 62.  Current statistics suggest a substantially longer processing period.  *See* U.S. DEP'T OF JUST., EXEC. OFF. FOR IMMIGR. REV. ADJUDICATION STAT. (Jan. 26, 2026), https://www.justice.gov/eoir/media/1344986/dl?inline (indicating that 99,603 appeals were filed and only 35,362 appeals were completed in fiscal year ("FY") 2025, that 202,803 appeals were pending at the end of FY 2025, and that the ratio of filed-to-completed appeals during the first quarter of FY 2026 was roughly 2.5-to-1).

**A.      Exhaustion**

In the immigration habeas context, administrative exhaustion is prudential, not jurisdictional.  *See W.T.M. v. Bondi*, No. 25-cv-2428, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). Prudential exhaustion is ordinarily required when (i) agency expertise necessitates agency consideration to generate a proper record and decision, (ii) excusing a party from exhausting administrative remedies would encourage the "deliberate bypass" of the administrative scheme; and (iii) administrative exhaustion would likely allow the agency to correct its own mistakes and alleviate the need for judicial review.  *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).  Even when all three *Puga* factors exist, however, the Court may waive prudential exhaustion if (i) the administrative remedies are "inadequate or not efficacious," (ii) "pursuit of administrative remedies would be a futile gesture," (iii) "irreparable injury" might result, or (iv) "the administrative proceedings would be

ORDER - 5

void." *See Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004)).

Respondents do not dispute the applicability of the *Puga* factors or the standard for waiving prudential exhaustion, which was drawn from *Laing*. *See* Return at 5–7 (docket no. 6) (citing *Hernandez* and *Laing*). Respondents merely disagree with petitioner's contention that the appropriate analysis leads to a waiver of the exhaustion requirement, citing *Aden v. Nielsen*, No. C18-1441, 2019 WL 5802013 (W.D. Wash. Nov. 7, 2019). *Aden* is, however, distinguishable,[5] and the Court declines to adopt its analysis. Unlike the petitioner in *Aden*, petitioner in this matter is not subject to a final order of removal, has not been convicted of a felony offense or crime of moral turpitude, and presents health and family care reasons for concluding that irreparable injury would result from requiring her to remain in custody while appealing the denial of bond to the BIA. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003–04 (N.D. Cal. 2018) (concluding that the petitioner, who had lived in the United States for 18 years, had a pending criminal case that her detention rendered more difficult to defend, and was the

---

[5] In *Aden*, the petitioner had been convicted of robbery offenses that rendered him removable. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1002 (W.D. Wash. 2019). A final order designated the Republic of Kenya as the country of removal, but the Kenyan Consulate General denied ICE's request for a travel document after determining that the petitioner was not a citizen of Kenya. *Id.* The petitioner was released from custody but then re-detained when ICE obtained documents for removing him to the Federal Republic of Somalia. *Id.* at 1002–03. Habeas relief was granted, and the *Aden* Court ordered that the petitioner be provided a bond hearing. *Id.* at 1023. With regard to the immigration judge's subsequent denial of bond, the *Aden* Court concluded that the petitioner's challenge had "possible validity on the existing record," but declined to reach the merits because the petitioner had not exhausted his administrative remedies. 2019 WL 5802013, at *1–3.

ORDER - 6

primary caregiver for a 9-year-old child, had demonstrated irreparable harm excusing her from administratively exhausting bond-denial remedies).  Petitioner has resided in the United States for about 20 years, has remained crime-free for the last 18 years, has worked to support her family and regularly filed her tax returns, and has three children who are United States citizens, one of whom is still fairly young and in need of parental supervision.  *See* Ex. B to Kang Decl. (docket no. 2-2).  Petitioner is not in good health, and she was scheduled to undergo cataract surgery in April 2026.  *Id.* (docket no. 2-2 at 88).  The Court exercises its discretion to waive administrative exhaustion in this matter.  *See Rosales v. Simon*, No. 26-cv-86, 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026) (observing that the federal respondents had "not advanced any compelling argument for the proposition that [the petitioner] should be required to appeal to the BIA before seeking relief" in a habeas proceeding, and refusing to require the petitioner to "'sit in an ICE detention facility' for months on end while he awaits a BIA decision"); *see also Garcia Ortiz v. Henkey*, No. 26-cv-43, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (concluding that, "given the broader irregularities in bond hearings across the country," "administrative remedies in the immigration system appear no longer efficacious" and that "[m]andating administrative exhaustion would be a 'futile gesture' that prolongs this [irreparable] injury [of prolonged ICE detention] without creating a meaningful opportunity for the agency to correct its mistakes").

B.    **Abuse of Discretion**

Respondents attempt to support the denial of bond by arguing (i) petitioner has not disputed the accuracy of the contents of DHS Form I-213, and the immigration judge

ORDER - 7

properly relied on the hearsay within the document, (ii) petitioner has not established an abuse of discretion on the part of the immigration judge, and (iii) the immigration judge's decision reflects her consideration of the relevant factors and evidence in the record.  *See* Return at 8–11 (docket no. 6).  Respondents' contentions lack merit.  First, petitioner has indeed challenged the conclusory statement in DHS Form I-213 concerning her alleged failure to cooperate for two reasons, namely (i) the assertion was made by an officer who was not present during the arrest, and (ii) characterizing, without personal knowledge, petitioner as "resisting" ignored the circumstances, *i.e.*, agents (who are not described as wearing uniforms or as having identified themselves) approaching petitioner from behind in a grocery-store parking lot while she was in the process of loading her car.  *See* Pet. at ¶¶ 44–45.  Given the failure to identify any actions petitioner might have taken that could have been perceived as uncooperative or resisting arrest, no reasonable, impartial decisionmaker could conclude that a petite woman reacting with understandable alarm in the situation was somehow indicative of a flight risk or dangerousness to the community. *See* *W.T.M.*, 2026 WL 262583, at *4.

Second, petitioner has demonstrated the requisite abuse of discretion.  The record unequivocally contradicts the immigration judge's finding of dangerousness and flight risk.  Petitioner has children who are citizens of, and therefore rooted in, the United States, other family members in the local area, steady employment, and community connections developed over a 20-year period.  *See* Ex. B to Kang Decl. (docket no. 2-2). She requires regular doses of prescription medications and consistent access to glucose testing equipment.  *Id.* (docket no. 2-2 at 88).  She has nephropathy, neuropathy, and

ORDER - 8

retinopathy, as well as significant cataracts.  _Id._  At the time of her arrest and the bond hearing, petitioner was apparently not fully recovered from septic shock for which she had been hospitalized in the fall of 2025.  _Id._  Whether petitioner's condition has improved or worsened during her detention at the NWIPC is unknown.  Petitioner's misdemeanor conviction, for which she served no time in custody, is essentially ancient history, and the notion that petitioner could, given her health concerns, or would flee and/or poses some danger to the community is entirely unsupported by the evidence.

Third, respondents' reliance on the immigration judge's written decision, as somehow explaining her reasoning, is misplaced.  The two-page order set forth factors to be considered, including whether the noncitizen has a fixed address, the length of the noncitizen's residence in the United States, and the noncitizen's family ties in the country, employment history, record of court appearances, criminal history, history of immigration violations, attempts to flee prosecution or escape authorities, and manner of entry into the United States.  Ex. A to Kang Decl. (docket no. 2-1 at 3).  All these factors weigh against detaining petitioner.  The immigration judge's decision also summarizes information provided by petitioner and DHS, and then it states in conclusory fashion:

> Based on all the evidence of record the court found no jurisdiction.  In the alternative the court finds the respondent did not establish she is not a danger or a flight risk.

_Id._  The Court is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors.  The Court must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion.

/ / /

ORDER - 9

## C.    Remedy

Respondents appear to contend that, even if petitioner presents no flight risk or danger to the community, she is not entitled to release because her detention has not become indefinite.  *See* Return at 11 (docket no. 6).  They offer, however, no foreseeable end date to petitioner's time in custody, and they cite no authority for their disturbing proposition.  Petitioner's continued detention does not serve any immigration purpose, particularly in light of petitioner's application for cancellation of removal, which she has an incentive to pursue and as to which she will be motivated to appear for immigration proceedings, and thus, the Court will exercise its discretion to order petitioner's release. *See* *W.T.M.*, 2026 WL 262583, at *5; *see also* *Lima Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764 (W.D. Wash. Apr. 10, 2026).

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1)    The petition for a writ of habeas corpus, docket no. 1, is GRANTED, and respondents shall immediately RELEASE petitioner Azucena Vasquez Lopez (aka Azucera Vasquez-Lopez) from custody at the NWIPC;

(2)    Within twenty-four (24) hours of the entry of this Order, respondents shall file a declaration confirming that petitioner has been released from custody;

(3)    Respondents shall return to petitioner any seized personal property;

(4)    Within seventy-two (72) hours of the entry of this Order, respondents shall file a declaration confirming that any seized personal property has been returned to petitioner or her attorney;

ORDER - 10

(5)     Respondents shall not re-detain petitioner, or subject petitioner to electronic monitoring, without at least seven (7) days' advance written notice and a pre-deprivation hearing before a neutral decisionmaker unless probable cause exists for believing petitioner has committed or is attempting to commit a criminal offense;

(6)     The Clerk is directed to enter judgment consistent herewith after the declaration required by Paragraph 2, above, has been filed and to send a copy of this Order and the Judgment to all counsel of record.  Petitioner may submit an application for attorney's fees and costs under the Equal Access to Justice Act within thirty (30) days after judgment is entered.  *See* 28 U.S.C. § 2412(d)(1)(B).

IT IS SO ORDERED.

Dated this 13th day of April, 2026.

Thomas S. Zilly
United States District Judge

ORDER - 11